### McCRADY *v.* PRATT.

1. PARENT AND CHILD — BOARD OF CHILD — LIABILITY OF PARENT —EVIDENCE.

Where suit is brought against a father for the board of his son, the burden is on plaintiff to show, by a fair preponderance of the evidence, that at the time the son went to the plaintiff's to board, he was authorized to procure board upon his father's

credit, and that the board was furnished relying upon the father as paymaster, and upon him alone.

2. SAME.

In an action against a father for the board of the son, evidence examined and *held* that there was none on which to base a finding that the son had authority to bind his father for board after he reached the age of 21.

Error to Kent; Perkins, J.   Submitted October 7, 1904. (Docket No. 47.)   Decided November 15, 1904.

Assumpsit by Eliza McCrady against Stephen N. Pratt for services rendered.   There was judgment for plaintiff, and defendant brings error.   Reversed.

*M. C. Huggett*, for appellant.

*Smedley & Corwin*, for appellee.

MONTGOMERY, J.  The plaintiff recovered a verdict and judgment of $50.25 for boarding the defendant's son. The theory upon which the case was submitted to the jury may be best stated ·by quoting the charge of the circuit judge:

"It is claimed on the part of the plaintiff that the defendant's son, Charles M. Pratt, with the knowledge and consent of the defendant, and at his request, came to the plaintiff's boarding house and requested board, and said that his father would pay for it, as he was learning the drug business and did not earn much money.

"It is claimed by the plaintiff that she relied upon these representations and boarded the defendant's son, and that at one time when he was sick that she nursed him and took care of him about two weeks; that he remained with her something like a year, when he began to run behind in his board bill, and shortly afterwards left the city.

"The plaintiff further claims that the defendant, Stephen Pratt, the boy's father, afterwards came to the city of Grand Rapids, and that she saw him and had a talk with him about the balance due her for the board of his son.

"Plaintiff further claims that in this conversation defendant admitted that he had told his son to come to Grand

Rapids and select a boarding place, and that he would pay his board until he was twenty-one years old.   *   *   *

'' On the part of the defendant it is claimed that he never agreed to pay for this board, or any of it; that he never authorized his son to procure board from the plaintiff; and that he did not agree to pay any of the boy's board after he became twenty-one years of age.

'' Now, as a matter of law, I charge you that a father is not ordinarily liable for the board furnished to his son, unless he agrees to pay the same; and I charge you that unless you find that the father told the son to pick out a good boarding house, and that he would pay his board, the father is not liable.   That is, the defendant in this case is not liable.   But should you find from the evidence in the case that the defendant did agree to pay his son's board, then he is liable, and the plaintiff should recover.

'' The burden of proof to prove this agreement rests upon the plaintiff.   She must satisfy your minds by a fair preponderance of evidence that, at the time this son came to her boarding house, he was authorized by the father to procure board upon the father's credit, and that she boarded the son, relying upon the father as the paymaster, and upon him alone.''

This instruction fairly states the rule of law.   The serious question, however, is whether there is a basis for a finding that the son had authority to bind the defendant for his board after he became 21 years of age.   There is no proof in the record that the defendant agreed with plaintiff, or any one acting for her, to pay his son's board for any period whatever.   The only evidence of any agreement to pay the son's board for any time is found in defendant's statement to plaintiff, as testified to by her, which was, in substance, that defendant had agreed with his son to pay his board until he was 21.   The payments for the son's board were made by remittances of the father to the son.   There was no privity between defendant and plaintiff, unless it be said that the promise of defendant to his son carried with it authority for the son to pledge his father's credit.   Such an interpretation of the testimony would be of doubtful accuracy at best, but, if it be adopted, that authority was clearly limited to the period covered by

the promise to the son. In other words, if there was an agency created, it was a special agency, and any attempt to bind the defendant for the son's board after the latter reached his majority was in excess of the authority granted.

This is not a case in which the agent has been held out as having authority beyond that actually given to him. There was no communication whatever between the plaintiff and defendant, and, as the defendant during his son's minority sent the money to pay his board bills to the son, there is no evidence of any satisfaction of the alleged contract by which the latter undertook to bind him.

The plaintiff's case rests finally upon the son's representations of his authority. That, under the circumstances of this case, an alleged principal cannot be bound by the false representations of an assumed agent as to his authority, is well settled. Mechem on Agency, § 100; *Rice* v. *Peninsular Club*, 52 Mich. 87; *Swanstrom* v. *Improvement Co.*, 91 Mich. 367.

The judgment is reversed, and a new trial ordered.

MOORE, C. J., and CARPENTER and GRANT, JJ., concurred. HOOKER, J., did not sit.